UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JUAN BETANCUR,<br>    Plaintiff<br><br>v.<br><br>LOCAL 103, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS,<br>    Defendant | Civil Action No. 21-cv-11543-AK |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

I. Introduction

Juan Betancur has sued his former employer, Local 103 of the International Brotherhood of Electrical Workers, alleging he was wrongfully discharged.

The pro se Complaint should be dismissed for several reasons, including: failure to comply with procedural rules; improper forum for a worker's compensation dispute; failure to exhaust administrative remedies; and failure to otherwise state a claim upon which relief can be granted. In addition, the Complaint should be dismissed under the prior-pending-action doctrine and *Colorado River* abstention, because this identical lawsuit is currently pending in Suffolk Superior Court.

II. Facts

The following allegations are taken from the Complaint, and recited here without any concession as to their accuracy. The employer and defendant is Local 103 of the International Brotherhood of Electrical Workers. The plaintiff is Juan Betancur, who was employed by Local

103 for almost eight years. (Although the defendant is a labor union, this suit does not implicate the union's role as a representative of workers, but rather its role as an employer of employees.)

On May 10, 2019, Betancur was injured when he fell off a ladder. Allegedly, the Employer did not want the claim reported to workers compensation, and the Complaint also acknowledges that it was filed on June 18, 2019. The Complaint then alleges a series of vague allegations about non-specific bad behavior. Mr. Betancur was fired on or about May 20, 2020 after he "congratulated" a female co-worker on her pregnancy even though she was not pregnant.

The current suit appears alleges that this court has subject matter jurisdiction under Title VII of the Civil Rights Act of 1964.

III. Procedural history

On March 1, 2021, Mr. Juan Betancur filed a complaint with the Massachusetts Superior Court containing the same vague allegations as those in the current complaint. See Shaw Affidavit, ¶ 3. On April 8, 2021, Local 103 filed a Rule 12 motion to dismiss all counts. Shaw Aff., ¶ 4. After a hearing on July 13, 2021, the Superior Court denied the motion without prejudice, allowing Mr. Betancur twenty-one days to file an amended complaint that "me[t] the pleading requirements," and serve it in accordance with Mass. R. Civ. P. 4(c). Shaw Aff., ¶ 6. The order further provided, as the judge explained at the hearing, that if Mr. Betancur failed to an amended complaint, Local 103 could re-file the motion to dismiss, which the Court would be "inclined to allow if the deficiencies in the pleadings [were] not corrected." Mr. Betancur did not file an amended complaint, and on August 6, 2021, Local 103 filed a renewed motion to dismiss all counts. Shaw Aff., ¶ 7. The Court allowed the motion and dismissed the complaint, citing the following reasons: (1) The complaint was unsigned Mr. Betancur; (2) he failed to make paper service under Mass. R. Civ. P. 4; (3) he failed to exhaust his administrative remedies as required

under G.L. c. 151B; and (4) to the extent he sought compensation for a workplace injury, he must bring an action before the Industrial Accident Board, which has exclusive jurisdiction for claims under G.L. c. 152. Shaw Aff., ¶ 7.

On September 15, 2021, the Superior Court entered final judgement for Local 103, and Mr. Betancur subsequently filed a notice of appeal on September 20, and the case remains pending. Shaw Aff., ¶¶ 8-9. Without addressing any of the pleading deficiencies that led to dismissal, Mr. Betancur initiated the current action on October 1, 2021 by filing a nearly identical complaint in federal court. Local 103 now moves to dismiss all counts.

IV.   Legal Arguments

   A.   Mr. Betancur sent the summons and complaint through the mail, therefore the case must be dismissed for insufficient service of process

Under Fed. R. Civ. P. 4(h)(1), a plaintiff may serve an unincorporated association in the United States by either "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process …;" or "in the manner prescribed by Rule 4(e)(1) for serving an individual." Fed. R. Civ. P. 4(h)(1). Rule 4(e)(1) permits service by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). Accordingly, Mr. Betancur could also have served process "by delivering a copy of the summons and of the complaint to an officer, to a managing or general agent, or to the person in charge of the business at the principal place of business thereof within the Commonwealth, if any; or by delivering such copies to any other agent authorized by appointment or by law to receive service of process, provided that any further notice required by law be given." Mass. R. Civ. P. 4(d)(2).

3

In the current action, Mr. Betancur sent the documents to Local 103 through standard USPS mail (Sheehan Aff., ¶ 5), which is not a mode of service permitted under either of the above state or federal rules. *See Mukherjee v. Blake*, No. 12-cv-11381, 2013 WL 2299521, at *2-3 (D. Mass. May 24, 2013) (citing Mass. R. Civ. P. 4(e)) ("Massachusetts rules permit service by mail only for service of process outside the Commonwealth."); *Aly v. Mohegan Council*, No. 08-cv-40099, 2009 WL 3299951, at *2 (D. Mass. Apr. 20, 2009) (sending summons and complaint through registered mail was insufficient under both Mass. R. Civ. P. 4(d)(2) and Fed. R. Civ. P. 4(h)(1)). Dismissal is required.

Service was improper for another reason, namely that service was not made by a non-party as required by Fed. R. Civ. P. 4(c)(2). The envelope that contained the summons was self-addressed to be returned to the plaintiff himself, indicating that he attempted to make service himself, which is not allowed under state or federal rules.[1] *Id.* ("As [the plaintiff] is a party to this action, he is not permitted to serve process under Fed.R.Civ.P. 4(c)(2). Massachusetts law regarding service of process by mail and service by parties is to the same effect . . . ."); *see also Smith v. United States*, 475 F. Supp. 2d 1, 9 (D.D.C. 2006) ("Given the fact that Plaintiff Daniel Smith effected service himself by sending the summons and Complaint in this case by certified mail…, it is clear that Plaintiffs did not comply with the basic requirements of Federal Rule of Civil Procedure 4(c)(2). As such, the apparent service upon Defendant was defective.")

---

[1] Mass. R. Civ. P. 4(c) does also provide that, if service is permitted through certified or registered mail, "the mailing may be accomplished by the party…" However, since service in this instance was not permitted by mailing under any state or federal law, service was still improper thus requiring dismissal. Mass. R. Civ. P. 4(c). Furthermore, even if mail service was proper, it must be through registered or certified mail, and Mr. Betancur sent the documents through standard, first class mail.

B. <u>This case is identical to Mr. Betancur's pending state court action and should be dismissed under the prior-pending-action doctrine</u>

Under the prior pending action doctrine, the court may dismiss or stay a later-filed action, provided two threshold conditions are met: "(1) there exists an identity of issues between the two actions and (2) the controlling issues in the later-filed action will be determined in the earlier-filed action." *Quality One Wireless, LLC v. Goldie Group, LLC*, 37 F. Supp. 3d 536, 541 (D. Mass. 2014) (citing 5C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1360, at 89 (3d ed. 2004)). If these two conditions are met, the court may look to several factors to determine whether to dismiss or stay a case under the prior pending action doctrine:

> (1) considerations of comity; (2) promotion of judicial efficiency; (3) adequacy and extent of relief available in the alternative forum; (4) identity of parties and issues in both actions; (5) likelihood of prompt disposition in the alternative forum; (6) convenience of parties, counsel and witnesses; and (7) possibility of prejudice to a party as a result of the stay [or dismissal]

*Id*. at 542 (quoting *Universal Gypsum of Georgia, Inc., v. American Cyanamid Co.*, 390 F. Supp. 824, 827 (S.D.N.Y. 1975)).

Here, the threshold factors are easily met; both the parties as well as the claims are identical in Mr. Betancur's state and federal actions. As to the rest of the analysis, all of the relevant factors weigh in favor of dismissal here. Due to the identical nature of the actions, dismissal would certainly promote judicial efficiency; considerations of comity suggest deference to the state court, *see Id*. at 543 (principles of comity favor deference when state court is first to gain jurisdiction over the dispute); the state case has advanced all the way to appeal, and based on the merits of Local 103's defense along with the high standard for reversal, a prompt disposition is likely; the state court is capable of providing the same relief as could a federal court on all relevant claims; and finally, there are no indications of unfair prejudice to Mr. Betancur if this action is dismissed. Furthermore, this court recently stated that "[t]he first-

5

filed suit should generally have priority 'absent the showing of balance of convenience in favor of the second action.'" *Faith v. Truman Capital Advisors, LP*, No. 19-cv-11301, 2020 WL 263534, at *3 (D. Mass. Jan. 16, 2020) (quoting *Adam v. Jacobs*, 950 F.2d 89, 93-94 (2d Cir. 1991)). Here, the balance of convenience heavily favors resolving this dispute in state court where litigation has been in process for over seven months and an appeal is already pending, the state action should have priority and the federal action should be dismissed.

    C.  <u>The Court should dismiss the Complaint under the doctrine of *Colorado River* abstention</u>

The doctrine of Colorado River abstention was established in *Colorado River Water Conservation District v. United States*, 425 U.S. 800, 820 (1976), and it "allows federal courts in limited circumstances to stay or dismiss proceedings that overlap with concurrent litigation in state court." *Jimenez v. Rodriguez-Pagan*, 597 F.3d 18, 21 (1st Cir. 2010). The First Circuit applies to an eight-factor balancing test to determine whether the circumstances of a case suggest dismissal under *Colorado River* abstention:

> (1) whether either court has assumed jurisdiction over a res; (2) the [geographical] inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the vexatious or contrived nature of the federal claim; and (8) respect for the principles underlying removal jurisdiction.

*Jimenez v. Rodriguez-Pagan*, 597 F.3d 18, 28 (1st Cir. 2010) (quoting *Rio Grande Cmty. Health Ctr. v. Rullan*, 397 F.3d 56, 71-72 (1st Cir. 2005)).

The first, second, and eighth factors are not relevant to this case, as no res is involved, the two courts are both located in the city of Boston, and the case was not removed to federal court. The majority of the remaining factors weigh heavily in favor of abstention. In regard to the fourth factor, the order in which the forums obtained jurisdiction, this weighs in favor of the state

6

action. Generally, "the relative progress of the suits is more important than the strict order in which the courts obtained jurisdiction," *Jimenez*, 597 F.3d at 30 (quoting *Gonzalez v. Cruz*, 926 F.2d 1, 4 (1st Cir. 1994)), and the factor "favors the case that is the more advanced at the time the *Colorado River* balancing is being done." *Id*. at 30-31 (quoting *Elmendorf Garcia, Inc. v. D.S. Am. (East), Inc.*, 48 F.3d 46, 52 (1st Cir. 1995)). "An absence of any federal proceedings beyond a motion to dismiss favors the surrender of jurisdiction." *Id*. at 31 (citing *Colo. River*, 424 U.S. at 820). Seeing as this motion to dismiss is the first filing of the case following Mr. Betancur's complaint, this factor clearly weighs in favor of abstention.

The sixth factor, the adequacy of the state forum to protect the parties' interests, also favors abstention, as there are no claims in this action that are subject to exclusive federal jurisdiction, and the available remedies are the same in both courts. As for the seventh factor, the Supreme Court has held that evaluation of a party's motive in filing parallel litigation may have "considerable merit" within the analysis. *Nazario-Lugo v. Caribevision Holdings, Inc.*, 670 F.3d 109 (1st Cir. 2012) (citing *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 17-18 n.20 (1983)). "[I]f [a plaintiff] went to federal court solely in reaction to [their] failure in the Commonwealth court, that fact should be held against [them] in the *Colorado River* balance." *Villa Marina Yacht Sales, Inc.,* 915 F.2d 7, 15 (1st Cir. 1990). *See also Id*. (quoting *Fuller Co. v. Ramon I. Gil, Inc.,* 782 F.2d 306, 309–10 (1st Cir. 1986) ("we previously have criticized such forum-shopping when a Commonwealth *defendant* 'rush[ed] over to the federal courthouse in the hope of obtaining a more favorable determination'")). This is essentially exactly what Mr. Betancur did. His case was dismissed in state court, and just days after filing an appeal of that dismissal, he "rushed over to the federal courthouse" and filed the instant action. These facts weigh heavily in favor of abstention.

While *Colorado River* abstention is a doctrine that is to be applied only to cases where "the clearest of justifications" warrant dismissal, this is one of those cases. *See Colo. River*, 424 U.S. at 819.

### D. Mr. Betancur failed to exhaust his administrative remedies

As of the date of this filing, Mr. Betancur has initiated no claim of discrimination before the Equal Employment Opportunity Commission or the Mass. Commission Against Discrimination. *See* Sheehan Aff. "Before an employee may sue in federal court on a title VII claim, [the employee] must first exhaust administrative remedies." *Franceschi v. U.S. Dept. of Veterans Affairs*, 514 F.3d 81, (1st Cir. 2008) (citing *Love v. Pullman Co.*, 404 U.S. 522, 523 (1972)). In order to satisfy the exhaustion requirement, the employee must file an administrative charge with the Equal Employment Opportunity Commission (EEOC) Generally, "[u]nder Title VII, the 'unexcused failure to exhaust administrative remedies effectively bars the courthouse door.'" *Harper v. Melendez*, No. 18-cv-12137, 2019 WL 6307201, at *2 (D. Mass. Nov. 22, 2019) (quoting *Jorge v. Rumsfeld*, 404 F.3d 556, 564 (1st Cir. 2005)).

"To the extent that [Mr. Betancur] alleges employment discrimination under Massachusetts state law, [he] is likewise required to exhaust administrative remedies prior to commencing a civil action." *Id*. (citing *Lattimore v. Polaroid Corp.*, 99 F.3d 456, 464 (1st Cir. 1996)). *See also*, *Gudava v. Ne. Hosp. Corp.,* 440 F. Supp. 3d 49, 57 (D. Mass. 2020) ("Chapter 151B requires a plaintiff to exhaust discrimination claims with MCAD before filing a civil action…"); *Everett v. 357 Corp*., 453 Mass. 585, 602 (2009) (failure to exhaust administrative remedies at the MCAD requires dismissal of court claim). Therefore, his claims of discrimination must be dismissed. As the Superior Court made clear to Mr. Betancur in the state proceedings, such claims cannot proceed unless a charge is first filed with the EEOC or MCAD.

With regard to his claim about unpaid vacation, a fair reading of the Complaint is that he is alleging that this is an adverse caused by alleged discrimination. To the extent he is alleging a violation of the Mass. Wage Act, G.L. c. 149, § 148, there is no indication that Mr. Betancur has filed a complaint at the Mass. Attorney General's office, which is required before suit on unpaid vacation wages is allowed. Sheehan Affidavit; G.L. c. 149, §§ 150; *Depianti v. Jan-Pro Franchising Int'l, Inc.*, 465 Mass. 607, 611 (2013) (although not a jurisdictional defect, exhaustion with the Attorney General is still required under the Wage Act). Mr. Betancur does state he "went to the Attorney General and they dismissed his case before he was given the opportunity to fully discuss all of the facts," but this is a reference to his termination and workplace injury, not his unpaid vacation.

E. <u>To the extent Mr. Betancur is alleging a violation of the Workers Compensation Statute, he is in the wrong forum</u>

It would appear that Mr. Betancur's suit primarily alleges violations under the state workers compensation statute, G.L. c. 152. For example, the complaint states that "Mr. Betancur feels as if he was never properly compensate for his injuries and its lasting conditions he suffers..." These allegations are not actionable because "[c]ompensation under [Chapter 152, workers comp] is the exclusive remedy for injuries to an employee suffered in the course of employment, regardless of the wrongfulness of the employer's conduct, or the foreseeability of harm." *Est. of Moulton v. Puopolo*, 467 Mass. 478, 482–83 (2014). The workers compensation statute "completely bars" Mr. Betancur's right to sue regarding his injuries. *See Ed (Ite) Chen v. Hartford Ins. Co., Inc.*, No. 17-cv-10596, 2017 WL 5196383, at *3 (D. Mass. Nov. 9, 2017). Accordingly, whether he was adequately compensated for his injuries is not a question this Court

9

may consider, and that claim must be dismissed. The merits of his workers compensation complaints can be resolved through the appropriate forum.

F. <u>In any event, the Complaint does not state any kind of legally cognizable claim</u>

Setting aside these procedural failings, Local 103 also moves to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, Mr. Betancur's factual allegations must "give the defendant fair notice of what the claim is and the ground upon which it rests and allege a plausible entitlement to relief." *Gilbert v. City of Chicopee*, 915 F.3d 74, 80 (1st Cir. 2019). In deciding the motion, the court is to assume that Mr. Betancur's factual allegations are true and make reasonable inferences in his favor, however "[a] mechanistic recital of the elements of a claim will not suffice." *A.G. ex rel Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013) "To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability." *Welch v. People's United Bank*, No. 20-cv-11390, 2021 WL 1391467, at *3 (D. Mass. Apr. 13, 2021) (quoting *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44-45 (1st Cir. 2012)). Even under this generous standard, Mr. Betancur's claims are too vague to raise a plausible entitlement to relief. [2]

---

[2] While *pro se* complaints are 'accorded an extra degree of solicitude,' even a *pro se* plaintiff is required to 'set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *Harper v. Melendez*, No. 18-cv-12137, 2019 WL 6307201, at *2 (D. Mass. Nov. 22, 2019) (quoting *Wright v. Town of Southbridge,* 2009 WL 415506, at *2 (D. Mass. January 15, 2009)). Moreover, given that Mr. Betancur brought the identical claim in state court, and was told by the Superior Court judge that his Complaint was lacking, his decision to file an identically flawed Complaint in this Court violates Fed. R. Civ. P. 11.

10

The first paragraph of the Complaint provides facts about his workplace injury, and as explained above, such facts are not actionable except through workers compensation (which he apparently has filed).

The second paragraph alleges that he returned to work before he was ready. He was "scorned by management and peers" and assigned to work with someone who takes drugs. He apparently commented to a female employee about her pregnancy even though she was not pregnant. He says he thinks he was scorned because he is gay, but he alleges no facts to suggest this is even remotely true. It is not even unclear what he is claiming is illegal.

The third paragraph makes another workers comp allegation, and says he was "punished" (though not how) because he "would not play the game." It is unclear what this even means.

Regarding the bullet points, the allegation about his "lazy" boss is connected to his belief about why the accident occurred, and is not relevant. His claim that he could not find a lawyer because the Union wields a lot of influence is not an actionable allegation. In the third paragraph, the Attorney General also declined to take up his case. His claim about Dr. Brown and light duty is related to the inactionable workers compensation allegations.

In the next paragraph, he makes an odd claim about the boss' nephew trying to steal his phone and delete "actual documentation" of something or other, but there is no basis to find anything illegal that could be attributed to the Defendant. Certainly no theory of illegality is expressed.

His claim that he was bullied and harassed by management after "word got out" about his lawsuit is too ambiguous for a response. Bullied and harassed how? Exactly by whom? Even if that is true, there is no indication of whether this is the kind of activity that the law would proscribe.

Finally, he claims he was not paid for seven years of vacation he never took and for earned sick and personal days. Employers are not required to pay for unused vacation or other paid time off under the Fair Labor Standards Act, *see* 29 U.S.C. § 203, therefore, these allegations could not constitute a cognizable claim under federal wage law. Even if the allegations were interpreted as a claim under the Massachusetts Wage Act, which does cover vacation pay, G.L. c. 149, § 148, Mr. Betancur provides no allegations about what the written or oral vacation policy was or how much vacation time he allegedly had and did not take. The Court, and the Defendant, are left to speculate as to what precisely the claim is. Furthermore, sick and personal leave are not covered by the Wage Act. *Tze-Kit Mui v. Massachusetts Port Auth.*, 478 Mass. 710, 713 (2018). Ultimately, it is not even clear he intends to claim a Wage Act violation (which has a three-year statute of limitations). One must speculate about a number of variables to even find a potential violation, which falls short of the pleading standards as explained above. Finally, he also never filed a non-payment of wage complaint with the Attorney General, which is a fatal flaw. Depianti v. Jan-Pro Franchising Int'l, Inc., 465 Mass. 607, 614 (2013).

V.   Conclusion

For the above-stated reasons, the Complaint must be dismissed.

                                             Respectfully submitted,

                                             LOCAL 103, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS

                                             By its Attorney,

                                             /s/ James A.W. Shaw
                                             James A.W. Shaw, Esq.
                                             BBO # 670993
                                             SEGAL ROITMAN, LLP

|  |  |
|---|---|
| Dated: October 19, 2021 | 33 Harrison Ave., 7th Floor<br>Boston, MA 02111<br>jshaw@segalroitman.com |

## CERTIFICATE OF SERVICE

I hereby state that I served a copy of the above document on the Plaintiff, Juan Betancur, by mailing him a copy by First Class Mail on October 19, 2021 to:

Juan Betancur
1084 Dorchester Street
Dorchester, MA 02125

/s/ James A.W. Shaw
James A.W. Shaw